

FILED

Jun 25 2018, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy Logan
Benson, Pantello, Morris, James &
Logan, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

David W. Stone IV
Stone Law Office & Legal Research
Anderson, Indiana

Joanne M. Kolbe
Law Offices of Joanne M. Kolbe
Warsaw, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Linda Sanders,<br>*Appellant/Petitioner,*<br><br>*v.*<br><br>Jerad Sanders,<br>*Appellee/Respondent.* | June 25, 2018<br><br>Court of Appeals Case No.<br>18A-DR-326<br><br>Appeal from the Marshall Circuit Court<br><br>The Honorable Robert O. Bowen, Special Judge<br><br>Trial Court Cause No.<br>50C01-1404-DR-90 |

**Bradford, Judge.**

# Case Summary

[1] Linda Sanders ("Wife") and Jerad Sanders ("Husband") married in 1998, and, in 2014, Wife petitioned to dissolve the marriage. At a final hearing in January of 2017, the terms of a property settlement ("the Agreement") were read into the record, after which both parties agreed to them. The trial court granted Wife's dissolution petition that day and directed the preparation of a dissolution order that incorporated the terms of the Agreement. Approximately one month later, Wife moved to repudiate the settlement, which motion the trial court denied. Wife moved to correct error and for relief from judgment. Wife's motion to correct error was ultimately deemed denied by operation of rule, and the trial court did not grant her relief from judgment. Wife challenges both the denial of the motion to correct error and the failure to grant relief from judgment, contending that the Agreement was invalid because it was not submitted in writing or signed before the trial court's approval, that she timely repudiated it, and the trial court failed to explicitly find that the Agreement was just and reasonable. Finding no merit in Wife's contentions, we affirm.

# Facts and Procedural History

[2] On April 25, 2014, Wife petitioned to dissolve her marriage to Husband, to whom she had been married since 1998. On January 9, 2017, a final hearing was held, at which the terms of the Agreement were read in open court:

> [Wife's counsel]: Well, yes. Essentially, um, the parties
> are going to keep all property present in their possession. The

real estate is going to be the property of the husband. The husband is going to transfer, I think, by way of QDRO or transference $30,000 from an IRA into my client's name. Ah, he's going to give her $5,000 cash—and when is that payable—when can you get that?

[Husband's counsel]: He had asked for six (6) months.

[Wife's counsel]: Okay. Six (6) months. Okay. Ah, the parties are going to be responsible for the debt in their individual name. I don't believe there's any joint debt.

[Husband's counsel]: Is the mortgage just in your name?

[Husband]: Yeah.

[Wife's counsel]: Okay. The mortgage—maybe—

[Husband's counsel]: I think you're right.

[Wife's counsel]: —we can recite that out in the decree. I think we know what the debts are. We can just put that—

[Husband's counsel]: Yes.

[Wife's counsel]: —in the decree.

[Husband's counsel]: But I think that's correct.

[Wife's counsel]: Okay. Ah, essentially then—in terms of personal property, there's still a number of items that are still at the house that my client would like to retrieve. Those are the items that she owned prior to the parties' marriage. I think there's like cast iron tub, her personal effects, some Christmas decorations, that type of thing, bed, dresser, that sort of stuff. She'd like to go ahead and keep all that. I think the parties know what's what or what's—whose is whose and so I don't think there's going to be any issue with that. It's just a matter of you being able to get some kind of truck to get over there and get it out. Right?

[Wife]: Uh-huh and some help.

Tr. Vol. II pp. 4–5.

[3]     The following discussion also occurred:

> THE COURT:  You heard Mr. Black recite what is the purported agreement between you and Jerad concerning the disposition of all assets and debts?  Is that correct?
>
> [Wife]:  Correct.
>
> THE COURT:  And is that what you agreed to?
>
> [Wife]:  Yes.
>
> THE COURT:  Do you feel that is fair and equitable to both of you?
>
> [Wife]:  Um—
>
> THE COURT:  Let me ask you this.  Is it—is it fair enough to get the mar—the divorce granted today?
>
> [Wife]:  Yes.

Tr. Vol. II p. 8.  The trial court stated,

> THE COURT:  Okay.  If there's nothing else, then I'm going to grant the Petition for Dissolution of Marriage.  Each of you are restored to the status of unmarried persons effective immediately.  All property and debts are divided in accordance with the agreement and your prior name is restored.  In other words, the divorce is granted today.  It's just a matter of—[Wife's counsel], you're going to prepare the decree?[1]

Tr. Vol. II p. 9.

[4]     The hearing then moved to the matter of the parties' tax obligations for 2015 and 2016, with Husband requesting that the parties refile jointly for those years to save money.  Wife initially objected, expressing concern that refiling might

---

[1] After a brief discussion, it was in fact determined that Husband's attorney would prepare the decree.

delay her taking possession of the marital home. When it was pointed out by Wife's counsel that she already had possession of the house and that Husband would be responsible for all of the taxes in any event, Wife's counsel asked her if she was "okay" with refiling, to which she responded, "I guess." Tr. Vol. II p. 14. The trial court asked Wife, "Is that agreeable[,] Mrs. Sanders?", to which she replied, "Sure." Tr. Vol. II p. 15. An entry for January 9, 2017, in the chronological case summary ("CCS") indicated as follows: "AGREEMENT RECITED - COURT GRANTS DISSOLUTION OF MARRIAGE THIS DATE [Husband's counsel] TO PREPARE DECREE ORDER TO BE DATED 01/09/2017[.]" Appellant's App. Vol. II p. 4.

[5] On February 10, 2017, Wife sent a handwritten letter to the trial court, requesting that it reconsider the Agreement. The trial court, presumably because Wife was represented by counsel, forwarded the correspondence to the parties and attorneys but took no further action. The CCS indicates that on February 15, 2017, the trial court issued the dissolution decree, which, consistent with the prior CCS entry, was dated and stamped as filed as of January 9, 2017. The decree reflected the terms of the Agreement discussed and agreed upon at the final hearing. A CCS entry on February 16, 2017, indicates that on February 15, 2017, Wife moved to withdraw the Agreement, and her counsel moved to withdraw his appearance.

[6] On March 13, 2017, the trial court held a hearing on Wife's motion to withdraw the Agreement. Wife testified, claiming that at the January 9 hearing (1) she could not hear hers or Husband's counsels, (2) the court reporter could

not hear her, and (3) she did not voice her objections more forcefully because she was "crying a lot" and had "several polyps[,]" which had to be removed after the hearing. Tr. Vol. II p. 25. Also on March 13, 2017, the trial court denied Wife's motion to withdraw the Agreement. On April 6, 2017, Wife filed a verified motion to correct error and/or for relief from judgment. On December 11, 2017, the trial court conducted a hearing on Wife's motions; Wife's motion to correct error was ultimately deemed denied, and her motion for relief from judgment pursuant to Indiana Trial Rule 60(B) has neither been adjudicated nor deemed denied.

# Discussion and Decision

## I. Standards of Review

### A. Motion to Correct Error

Wife contends that the trial court abused its discretion in denying her motion to correct error. We review denial of a motion to correct error for abuse of discretion. *Shane v. Home Depot USA, Inc.*, 869 N.E.2d 1232, 1234 (Ind. Ct. App. 2007). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court, or the reasonable inferences therefrom. *Id.*

### B. Motion for Relief from Judgment

Wife also contends that the trial court should have granted her motion for relief from judgment, seemingly filed pursuant to several grounds listed in Indiana Rule of Trial Procedure 60(B).

We review the denial of a motion for relief from judgment under Indiana Trial Rule 60(B) only for an abuse of discretion because such a motion is addressed to the equitable discretion of the trial court. *V.C. Tank Lines, Inc. v. Faison*, 754 N.E.2d 1061, 1064 (Ind. Ct. App. 2001). An abuse of discretion will be found only when the trial court's judgment is clearly erroneous. *Id.* A trial court's action is clearly erroneous when it is against the logic and effect of the facts before it and the inferences which may be drawn therefrom. *Id.* In ruling on a Trial Rule 60(B) motion, the trial court is required to "balance the alleged injustice suffered by the party moving for relief against the interests of the winning party and society in general in the finality of litigation." *Id.* (quoting *Chelovich v. Ruff & Silvian Agency*, 551 N.E.2d 890, 892 (Ind. Ct. App. 1990)).

*Goldsmith v. Jones*, 761 N.E.2d 471, 473–74 (Ind. Ct. App. 2002).

## II. Validity of Agreement

[9] At the heart of both of Wife's claims is her contention that the trial court's adoption of the oral Agreement into its dissolution decree was erroneous because (1) the Agreement was not reduced to writing before approval by the trial court, (2) the Agreement was not signed by the parties before approval by the trial court, (3) she timely repudiated it in any event, and (4) the trial court was required to explicitly find that the Agreement was fair and reasonable before approving it but failed to do so. If Wife cannot convince us of the merits of at least one of these contentions, it follows that she has failed to establish that the trial court abused its discretion in denying her motion to correct error or in not granting her relief from judgment.

## A. Whether the Agreement was Required to Be in Writing Before Approval by the Trial Court

[10] Indiana Code section 31-15-2-17(a) provides, in part, that "[t]o promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for […] the disposition of any property owned by either or both of the parties[.]" Wife contends that this language and related case law require that any such agreement must be reduced to writing before it can be properly accepted by the trial court. Husband contends that recitation of the terms of an agreement into the record is sufficient to satisfy section 31-15-2-17(a)'s writing requirement.

[11] We have noted that there are "strong policy reasons supporting the requirement that agreements be in writing, including: (1) ensuring the enforceability of agreements; (2) facilitating agreements that result from mutual assent; (3) achieving complete resolution of disputes; and (4) producing clear understandings that the parties are less likely to dispute or challenge." *Akers v. Akers*, 849 N.E.2d 773, 775 (Ind. Ct. App. 2006). In *Stolberg v. Stolberg*, 538 N.E.2d 1 (Ind. Ct. App. 1989), we concluded that the writing requirement was satisfied where

> [t]he substance of the agreement was testified to by [husband] and orally accepted by [wife]. The trial court interrogated both parties on the content of the agreement and their understanding thereof. Upon questioning, [wife] affirmed her request for approval of the settlement as stated by [husband]. Unquestionably, both [husband and wife] intentionally, with full

knowledge of the eventual outcome, entered into a joint agreement.

*Id.* at 4. The *Stolberg* court also rejected wife's claim that "the agreement signed by the trial judge was merely 'written evidence of an oral agreement[,]'" stating that "[w]e fail to see any real distinction between a written agreement and written evidence of an oral agreement. The distinction is one of semantics rather than substance. It was the written agreement contemplated by the statute." *Id.* We, too, fail to see any real distinction between a written agreement and written evidence of an oral agreement, as either can satisfy the policy concerns raised by the *Akers* court.

[12] Indeed, the *Akers* court reiterated *Stolberg*'s interpretation of the writing requirement:

> We believe that the writing requirement of Indiana Code § 31-15-2-17 can be satisfied in two ways. First, and most obviously, the parties can produce and sign a written document containing the terms of their agreement. The second way was suggested by Judge Sullivan, writing in concurrence in [*McClure v. McClure*, 459 N.E.2d 398 (Ind. Ct. App. 1984)]. He wrote: "While the agreement may not have been reduced to writing in a separate document and signed by the parties as well as by counsel, the agreement became binding upon the parties when it was stipulated into the record." *McClure*, 459 N.E.2d at 401 (Sullivan, J., concurring). We agree with Judge Sullivan that the writing requirement of Indiana Code § 31-15-2-17 can be satisfied by orally stipulating the terms of the settlement agreement into the court record. The parties themselves, their attorneys, or the trial court can recite the terms of the agreement in open court, and the parties can then acknowledge, under oath, their assent to those terms. Placing the agreement on the trial court record by

> way of a voice recording and/or the court reporters' transcript is tantamount to composing a written settlement document in that both procedures produce tangible proof of the terms of the agreement.

*Akers*, 849 N.E.2d at 775–76.

[13] After the terms of the Agreement were read in open court, Wife acknowledged her assent under oath. What Wife characterizes as her equivocation about the Agreement is more fairly described as clearing up her apparent confusion regarding the effect of refiling tax returns for 2015 and 2016. Whatever concerns Wife may have had about the taxes, they were satisfactorily addressed, as she ultimately agreed in open court to the provisions of the Agreement, including Husband's proposal that he refile his tax returns for 2015 and 2016. We conclude that the trial court's recitation of the Agreement's terms followed by Wife's assent to them satisfies section 31-15-2-17(a)'s writing requirement.

## B. Whether the Agreement Must Have Been Signed

[14] Wife also asserts that the writing must also have been signed by both parties before the trial court could approve it, citing to Indiana Code sections 31-15-2-17 and 31-15-2-13 for this proposition. Section 31-15-2-17 does contain the already-discussed writing requirement, but there is no signing requirement. Moreover, while section 31-15-2-13(a) does require the filing of verified pleadings "signed by both parties[,]" it only applies in cases where the trial court seeks to enter a "summary disposition decree without holding a final hearing[,]" which is not what occurred here. The authority cited by Wife does

not support her contention, and our research has uncovered none that does. Wife has failed to establish that the parties were required to sign a written Agreement as a prerequisite for approval by the trial court.

## C. Whether Wife Timely Repudiated the Agreement

Wife argues that, even if the writing requirement was satisfied, the trial erred in entering a decree that incorporated the Agreement after she timely repudiated it. As we noted in *McClure*, there is a "simple two-step process necessary to bring a valid property settlement agreement into existence[,]" namely that (1) the parties must come to a valid agreement and (2) the trial court must approve it. *McClure*, 459 N.E.2d at 401. Until a property settlement agreement is approved by the trial court, it can be repudiated by a party. *See id.* ("[O]ur decision is grounded solely on error by the trial court in approving an agreement that was timely repudiated.").

Here, the terms of the Agreement were read in open court and the parties agreed to them, after which the trial court explicitly approved it, stating on the record that "[a]ll property and debts are divided in accordance with the agreement[.]" Tr. Vol. II p. 9. The trial court also made it abundantly clear that its judgment was to be effective immediately, stating that the parties "are restored to the status of unmarried persons effective immediately" and, "In other words, the divorce is granted today." Tr. Vol. II p. 9. The trial court's CCS entry indicating that Husband's counsel was to prepare a dissolution decree to be submitted later but dated January 9, 2017—the date of the final hearing—further indicates that it considered the matter settled. Wife's

repudiation came over one month after the trial court approved the Agreement at the final hearing, which is too late.

[17] We acknowledge that some of our precedent indicates that the cutoff for repudiation is not when the property settlement is approved by the trial court but when the dissolution decree is issued. *See, e.g.*, *Anderson v. Anderson*, 399 N.E.2d 391, 398 (Ind. Ct. App. 1979) ("Hence, a settlement agreement that has not been approved by the dissolution court and incorporated and merged into the decree has no legal efficacy."). Under the circumstances of this case, at least, the actual issuance of the decree was little more than a formality, as the trial court made it clear that its judgment was to take effect immediately with a decree detailing the judgment to be issued later. Granting relief to Wife on the basis that the terms of the Agreement had not yet been incorporated into the decree when she objected would elevate form over substance in this case. Wife has failed to establish that she timely repudiated the Agreement.[2]

---

[2] In any event, Wife cannot even establish with certainty that she objected before the issuance of the decree. The trial court properly failed to act on Wife's letter to the trial court, as she was represented by counsel at the time, and Indiana does not recognize hybrid representation. *See, e.g.*, *Miedreich v. Rank*, 40 Ind. App. 393, 397, 82 N.E. 117, 118 (Ind. Ct. App. 1907) ("[A] party to an action may appear in his own proper person, or by attorney, but he cannot do both. If he appears by attorney, he should be heard through him.") (citation omitted). As for Wife's motion to withdraw the Agreement, which was filed by counsel, it is not at all clear that it was filed before the decree was issued. If anything, the record suggests the opposite, as the CCS entry indicating the issuance of the decree appears before the entry indicating Wife's motion to withdraw the Agreement.

## D. Whether the Trial Court Erroneously Failed to Consider Whether the Agreement Was Just and Reasonable

[18]  Finally, Wife argues that the trial court was required to explicitly determine that the Agreement was just and reasonable before approving it. Specifically, Wife argues that "the statutes require trial courts to insist upon a written agreement or perform an analysis of factors listed at I.C. 31-15-7-5."[3] Appellant's Br. p. 38. Even if we assume, *arguendo*, that these are, in fact, the only two options available to the trial court, we have already determined that the recitation of the Agreement's terms into the record, coupled with the parties' assent to them under oath, satisfies the writing requirement of Indiana Code section 31-15-2-17(a). Wife has failed to establish error in this regard.

# Conclusion

---

[3] Indiana Code section 31-15-7-5 provides as follows:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>     (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>     (2) The extent to which the property was acquired by each spouse:
>         (A) before the marriage; or
>         (B) through inheritance or gift.
>     (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>     (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>     (5) The earnings or earning ability of the parties as related to:
>         (A) a final division of property; and
>         (B) a final determination of the property rights of the parties.

[19]  We conclude that the Agreement was not required to be reduced to writing or signed before approval by the trial court, Wife did not timely repudiate the Agreement, and the trial court did not err in failing to find that the Agreement was just and reasonable. Consequently, we further conclude that the trial court did not err in denying Wife's motion to correct error or in failing to grant her relief from judgment.

[20]  We affirm the judgment of the trial court.


Baker, J., and Kirsch, J., concur.