## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 02 2019, 9:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Douglas Alan Dyson
Columbia City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Douglas Alan Dyson,

*Appellant-Defendant,*

v.

Indiana Department of Environmental Management,

*Appellee-Plaintiff.*

April 2, 2019

Court of Appeals Case No.
18A-MI-1752

Appeal from the Wabash Circuit Court

The Honorable Kenton W. Kiracofe, Special Judge

Trial Court Cause No.
85C01-1202-MI-153

**Robb, Judge.**

# Case Summary and Issues

[1] In 2012, the Indiana Department of Environmental Management ("IDEM") sought to enjoin Douglas Dyson, his brother, and Dyson Brothers Property, LLC from disturbing property owned by the LLC, a former landfill site containing asbestos and other contaminants. Following the issuance of a preliminary injunction, IDEM alleged Dyson violated the injunction by disturbing the land which the Dysons intended to use for farming. After Dyson failed to appear for a hearing on the violation, the trial court issued a writ of attachment and set a $50,000 cash bond. The trial court subsequently issued a permanent injunction and assessed a civil penalty of $52,500. Months later, Dyson was arrested and posted the $50,000 cash bond. IDEM filed a motion with the trial court to release the cash bond to IDEM as partial payment of the civil penalty. The trial court granted the motion in early 2014.

[2] Over four years later, Dyson filed a series of motions with the trial court seeking the right to subrogation and imposition of a constructive trust for the $50,000. The trial court found Dyson's motions "incoherent, insufficient, and/or misinformed and without legal basis," and took no further action. Dyson filed a motion to correct error challenging the writ of attachment, permanent injunction and civil penalty, and order releasing the cash bond to IDEM. The trial court denied the motion and Dyson appealed. Although we conclude all of Dyson's arguments are waived, we consolidate the issues and address two questions: (1) whether the trial court abused its discretion in denying Dyson's post-judgment motions; and (2) whether the underlying judgments Dyson

challenges on appeal were proper. Concluding the trial court did not abuse its discretion in denying Dyson's post-judgment motions and its underlying judgments were proper, we affirm.

# Facts and Procedural History

[3] Dyson Brothers Property, LLC acquired the former Celotex landfill site located at 700-1400 West Main Street, Lagro, Wabash County, Indiana, 46941, from another corporation in November 2011. On January 14, 2012, IDEM received a complaint alleging the site was contaminated with asbestos and the new owners intended to farm the property. IDEM filed a Petition for an Administrative Search Warrant along with a Verified Motion for a Temporary Restraining Order and Complaint for Preliminary and Permanent Injunction on February 15, in which it sought to enjoin Dyson and his brother, Jeffrey, from disturbing the site. The complaint alleged that the brothers intended to farm the land, which contained asbestos and other hazardous substances. *See* Appellee's Appendix, Volume II at 48. The trial court held a hearing that same day and granted the temporary restraining order and search warrant.

[4] The restraining order was extended on February 24 and served on Dyson but returned as "refused." *Id*. at 6. IDEM filed an amended complaint for preliminary and permanent injunction joining Dyson Brothers Property, LLC as a party and the trial court granted the preliminary injunction enjoining Dyson, Jeffrey, and Dyson Brothers Property, LLC from further disturbing the

landfill.[1]  The order was served on Dyson but was returned as "refused."  *Id.* at 7.  The order was served again and returned with a note stating "RTS Trustee not at this location[.]"  *Id.*

[5]  After an IDEM employee observed that the site had been "further disturbed[,]" IDEM filed a motion for rule to show cause for the Dysons' violation of the preliminary injunction.  *Id.* at 127.  The trial court issued an order setting a hearing and advised that "failure to appear may result in the issuance of a bench warrant for their arrest."  *Id.* at 130.  After Dyson and Jeffrey failed to appear at the hearing on May 18, 2012, IDEM filed a motion for a writ of attachment due to the Dysons' violation of the injunction and refusal to participate in proceedings.  The trial court granted the writ of attachment and issued a $50,000 cash bond.

[6]  A hearing on IDEM's permanent injunction was scheduled for June 28, 2013.  Before the hearing, IDEM filed a brief in support of its request for a permanent injunction alleging Dyson "disturbed the landfill cover at the site without proper precautions that resulted in the exposure of asbestos-containing material in violation of applicable regulations. . . [which] pose[s] a clear threat to human health and the environment[.]"  *Id.*, Vol. III at 24-25.  IDEM also argued

---

[1] Because Dyson is the only party appealing, we have limited our recitation of the proceedings and facts only to those pertaining to Dyson.

Dyson was liable for civil penalties. *Id.* at 28-29. The trial court granted the permanent injunction and ordered, in part:

> 2. Defendants shall not bulldoze, plow, till or otherwise disturb the former landfill and lagoon areas of the site due to the confirmed presence of asbestos in the former landfill and due to the fact that IDEM records indicate the presence of phenols and other paint-related wastes at the site as well.

> 3. Defendants are hereby ordered to replace and maintain a two (2) foot compacted soil final cover on the landfill planted with appropriate vegetation to control erosion. . . .

> 4. Defendants are hereby restrained and enjoined from removing or disposing of any discovered regulated asbestos-containing material which should be disposed of by an Indiana licensed asbestos abatement contractor.

> 5. Defendants are hereby restrained and enjoined from interfering with any site investigation IDEM may perform[.]

*Id.* at 96-97. The trial court also assessed a $52,500 civil penalty to be paid to IDEM.

[7] Over five months later, the Wabash County Sheriff filed a return on the writ of attachment indicating that Dyson had been arrested on November 27, 2013. Dyson posted the $50,000 cash bond and, as part of the bond agreement, was required to continuously appear and comply with the court until prosecution concluded. *See id.* at 116. The agreement also indicated if Dyson failed to

appear, the court would enter a judgment against him and the clerk would satisfy the judgment with the cash bond.

[8] In January 2014, IDEM filed a motion to release the cash bond to IDEM alleging that there had been no appeal of the permanent injunction, IDEM had not yet received the civil penalty, Dyson had not replaced and maintained the two-foot compacted soil cover, and IDEM had not received a signed and recorded copy of the environmental restrictive covenant required by the injunction. Dyson and Jeffrey were given twenty-one days to respond to the motion, but no response was filed. Having received no response, the trial court granted the motion to release the $50,000 cash bond to IDEM.

[9] Over four years later, on April 2, 2018, Dyson filed a Motion for Order to Certify Right of Subrogation. Dyson requested the court to certify his right to subrogation and "for verification for an accounting, for verification of list of collateral, and for verification of statement of accounts, regarding the above referenced case[.]" *Id*. at 148. On April 13, the trial court found Dyson's motion "incoherent, insufficient and/or misinformed and without legal basis," and took no further action. *Id*. at 150. That same day, Dyson filed a Motion for Remedy by Court Ordered Right of Subrogation, in which he requested a "right of subrogation or for the declaration of a constructive trust" and again "for verification for an accounting, for verification of list of collateral, and for verification of statement of accounts, to prevent the failure of justice." *Id*. at 151. The trial court also found this motion incoherent, insufficient, misinformed, and without legal basis, and again took no further action.

[10]     On May 7, Dyson filed a Motion for Specific Findings of Fact and Supporting Conclusion of Law regarding the trial court's two previous orders. Once again, the trial court found the motion to be incoherent, insufficient, misinformed, and without legal basis and took no action. Dyson filed a Verified Motion to Correct Errors on July 3 challenging the order. In his motion, Dyson argued: (1) that IDEM and the court "stole" the $50,000 cash bond and it should be returned to him; (2) he has a lawful claim under Indiana's False Claims Act against IDEM; (3) he was not a real party in interest in the case; (4) he has a common-law fraud claim against IDEM; (5) he was unlawfully arrested; and (6) the trial court should impose a constructive trust for the $50,000 because IDEM was unjustly enriched. *See id*. at 157-65. The trial court denied his motion to correct error on July 10. Dyson now appeals.

# Discussion and Decision

## I. Waiver

[11]     We first address the threshold issue of waiver. *See Thalheimer v. Halum*, 973 N.E.2d 1145, 1150 (Ind. Ct. App. 2012). As best we can discern, Dyson's 2018 post-judgment motions appear to challenge the 2012 writ of attachment for his arrest and $50,000 cash bond, the 2013 permanent injunction ordering payment of the $52,500 civil penalty, and the 2014 order releasing the cash bond to IDEM as partial payment of the penalty. Thus, Dyson's 2018 motions can be characterized as motions for relief from the previous judgments pursuant to Indiana Trial Rule 60(B).

Pursuant to Rule 60(B), upon motion, the trial court *may* relieve a party from a judgment for the following reasons:

> (1) mistake, surprise, or excusable neglect;
>
> (2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> (4) entry of default or judgment by default was entered against such party who was served only by publication and who was without actual knowledge of the action and judgment, order or proceedings;
>
> * * *
>
> (6) the judgment is void;
>
> (7) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
>
> (8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).

[13]     First, we note that Dyson did not file timely post-judgment motions. A 60(B) motion must be filed "within a reasonable time" when a party seeks relief based on the reasons in (6), (7), and (8), but must file a motion "not more than one year after the judgment, order or proceeding was entered or taken" if based on any reasons stated in subsections (1) through (4). *Id.* A review of the record indicates that Dyson filed his first post-judgment motion over four years after the trial court's most recent judgment.

[14]     Furthermore, Dyson's motions do not present recognized grounds for relief under Rule 60(B). In Dyson's first motion, he requested that the trial court certify his right of subrogation and "for verification for an accounting, for verification of list of collateral, and for verification of statement of accounts, regarding the above referenced case[.]" Appellee's App., Vol. III at 148. Next, Dyson filed a motion requesting the trial court order his right of subrogation, declare a constructive trust, and again "for verification for an accounting, for verification of list of collateral, and for verification of statement of accounts[.]" *Id.* at 151. Dyson filed a third motion for specific findings of fact and support conclusions of law with respect to his previous motions. The trial court found the three motions incoherent and took no further action. In response, Dyson filed a motion challenging the merits of the underlying judgments and the trial court denied the motion. Dyson failed to present any cognizable basis for relief set forth in subsection (B) from the trial court's previous judgments in his motions.

[15] Based on the substance of Dyson's motions, he should have filed a notice of appeal pursuant to Indiana Appellate Rule 9(A)(1) in 2012 within thirty days after the entry of a final judgment, which is "one which disposes of all the issues as to all of the parties and puts an end to the particular case." *Bolden v. State*, 736 N.E.2d 1260, 1261 (Ind. Ct. App. 2000). As our supreme court has explained, a 60(B) motion is not a substitute for a direct appeal and "address[es] only the procedural, equitable grounds for justifying relief from the legal finality of a final judgment, not the legal merits of the judgment." *In re Paternity of P.S.S.*, 934 N.E.2d 737, 740 (Ind. 2010) (quotation omitted).

> In this case Father advances no argument explaining how the trial court may have abused its discretion in denying his 60(B)(2) motion for relief. For example Father does not contend that evidence newly discovered after the date of the trial court's order of dismissal entitled Father to relief; nor does Father suggest an extraordinary set of circumstances occurring since the entry of the trial court's order of dismissal that warrant the grant of Father's 60(B)(2) motion. Instead the substance of Father's claim is a challenge to the merits of the trial court's order of dismissal. We decline to entertain this attempted but untimely appeal of the trial court's order.

*Id.* at 741. Such is the case here.

[16] In addition, the State argues that Dyson's claims on appeal are waived for failure to present a cogent argument. We agree. Pursuant to our appellate rules, a party's argument must be supported by cogent reasoning, as well as citations to the authorities, statutes, and portions of the Record relied on for appeal. Ind. Appellate Rule 46(A)(8)(a). Dyson's brief contains vague

arguments unsupported by relevant legal authority, citations to the record, or cogent reasoning.

[17] For example, Dyson appears to argue he has a right to subrogation and a return of the $50,000 cash bond and cites to case law explaining the doctrine of subrogation and a constructive trust. *See* Brief of Appellant at 9-11, 17-19. However, Dyson fails to show how the right to subrogation or a constructive trust is applicable in this case. Similarly, he maintains that IDEM was unjustly enriched by his cash bond but fails to present any cogent reasoning as to how, exactly, IDEM was unjustly enriched.

[18] It also appears that Dyson challenges the trial court's jurisdiction of the case and claims the $50,000 bail was excessive. These issues were not raised in his post-judgment motions and were not grounds for relief from the judgment in the first place. Thus, Dyson raises these issues for the first time on appeal. We have held that "[a]n appellant who presents an issue for the first time on appeal waives the issue for purposes of appellate review." *Mid-States Gen. & Mech. Contracting Corp. v. Town of Goodland*, 811 N.E.2d 425, 436 n.2 (Ind. Ct. App. 2004).

[19] Throughout his brief, Dyson asserts that he has his own lawful claims against IDEM under the Indiana False Claims Act, common-law fraud, and unjust enrichment in contract law. The State argues that Dyson fails to demonstrate the trial court gave him permission to assert these counterclaims pursuant to Indiana Trial Rule 13(E), which states: "A claim which either matured or was

acquired by the pleader after serving his pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading."

[20] Dyson's post-judgment motions and arguments on appeal primarily address the merits of the trial court's underlying judgments that were entered over four years ago and are therefore untimely. Moreover, Dyson argues several issues for the first time on appeal and fails to support his other arguments with citations to the record, relevant legal authority, and cogent reasoning, and are therefore waived.

## II. Motions for Relief from Judgment

[21] Waiver notwithstanding, we briefly address whether the trial court erred in denying Dyson's post-judgment motions. In substance, Dyson's recent motions, including his motion to correct error, are motions for relief from the trial court's underlying judgments pursuant to Indiana Rule of Trial Procedure 60(B), which we analyze accordingly.

> We review the denial of a motion for relief from judgment under Indiana Trial Rule 60(B) only for an abuse of discretion because such a motion is addressed to the equitable discretion of the trial court. An abuse of discretion will be found only when the trial court's judgment is clearly erroneous. A trial court's action is clearly erroneous when it is against the logic and effect of the facts before it and the inferences which may be drawn therefrom. In ruling on a Trial Rule 60(B) motion, the trial court is required to "balance the alleged injustice suffered by the party moving for relief against the interests of the winning party and society in general in the finality of litigation."

*Sanders v. Sanders*, 105 N.E.3d 1102, 1106 (Ind. Ct. App. 2018) (quoting *Goldsmith v. Jones*, 761 N.E.2d 471, 473-74 (Ind. Ct. App. 2002)) (internal citations omitted). The movant bears the burden of establishing the grounds for relief under Trial Rule 60(B). *In re Paternity of P.S.S.*, 934 N.E.2d at 740.

[22] Dyson filed a Motion for Order to Certify Right of Subrogation and requested "verification for an accounting, for verification of list of collateral, and for verification of statement of accounts, regarding the above referenced case[.]" Appellee's App., Vol. III at 148. He also filed a Motion for Remedy by Court Ordered Right of Subrogation or for the Declaration of a Constructive Trust requesting the right of subrogation or the declaration of a constructive trust, as well as "verification for an accounting, for verification of list of collateral, and for verification of statement of accounts, to prevent the failure of justice." *Id*. at 151. With respect to each motion, the trial court found Dyson's motions to be "incoherent, insufficient and/or misinformed and without legal basis," and indicated that it would be taking no further action. *Id*. at 150, 153. Dyson did not elaborate on his request for a verification for an accounting or a list of collateral, why he was entitled to subrogation or a constructive trust, or a cognizable basis for relief.

[23] Dyson then filed a motion for specific findings of fact and conclusions of law with respect to his previous motions. The trial court again found it to be "incoherent, insufficient and/or misinformed and without legal basis," and took no further action. *Id*. at 156. Because the trial court found Dyson's motions incoherent, there was no reason for it to further explain its orders.

Dyson filed a motion to correct error in response to the trial court's orders declining to take further action and challenged the underlying judgments from four years prior but the motion was denied.

[24] Here, we cannot conclude the trial court's decision declining to take further action on several motions it deemed "incoherent, insufficient and/or misinformed and without legal basis," *id*. at 150, or the denial of Dyson's motion to correct error is "against the logic and effect of the facts before it[.]" *Sanders*, 105 N.E.3d at 1106. Therefore, the trial court did not abuse its discretion with respect to Dyson's 60(B) motions.

## III. Underlying Judgments

[25] Although we have determined Dyson has waived any arguments pertaining to the underlying judgments, we nonetheless address their validity. We conclude the trial court properly entered the writ of attachment, permanent injunction, and order releasing the cash bond to IDEM.

## A. Writ of Attachment

[26] Dyson appears to challenge the trial court's issuance of a writ of attachment resulting in his arrest. Indiana Code section 34-47-4-2 provides the court with the authority to issue a writ of attachment and states, in part:

> (a) For the purpose of procuring personal jurisdiction over a person who has allegedly violated a court order . . . the court may issue a writ of attachment of the body of the person.

(b) A writ of attachment issued under subsection (a) shall:

   (1) be directed to a sheriff or assisting sheriff; and

   (2) fix an amount of:

      (A) bail, if the order that the person has allegedly violated does not concern a child support obligation . . . .

(c) A sheriff or assisting sheriff who receives an order under this section shall immediately:

   (1) serve the writ; and

   (2) take the person into custody.

A sheriff may serve a writ of attachment and take the person into custody in any county.

The amount of bail is within the sound discretion of the trial court. *Sneed v. State*, 946 N.E.2d 1255, 1257 (Ind. Ct. App. 2011).

[27] Here, after IDEM's motion for a preliminary injunction was granted, an IDEM employee observed that the site had been disturbed and filed a motion for rule to show cause. The trial court issued an order setting a hearing and advised that "failure to appear may result in the issuance of a bench warrant for . . . arrest." Appellee's App., Vol. II at 130. After Dyson failed to appear at the hearing on May 18, 2012, IDEM filed a motion for a writ of attachment for

Dyson and Jeffery's violation of the injunction and refusal to participate in the proceedings. The trial court granted the writ of attachment and fixed a $50,000 cash bond. Due to Dyson's violation of the preliminary injunction by disturbing the site and failing to appear, the trial court properly exercised its statutory authority in issuing a writ of attachment with an appropriate amount of bail.

## B. Permanent Injunction

[28] Dyson also clearly takes issue with the trial court's grant of a permanent injunction which assessed a $52,500 civil penalty. In his brief, he requests the return of his $50,000 cash bond, which was released to IDEM as partial payment of the civil penalty. The State argues the civil penalty was properly imposed pursuant to Indiana Code section 13-30-4-1, which provides that a person who violates environmental laws is liable for a civil penalty not to exceed $25,000 per day. The statute further provides that IDEM may recover the penalty in a civil action.

[29] Before the June 2013 hearing on the permanent injunction, IDEM filed a brief alleging that Dyson disturbed the landfill cover at the site, exposing asbestos-containing material and posing a threat to human health and the environment. IDEM sought a permanent injunction against further disturbing the site and also sought civil penalties. The trial court granted the permanent injunction and found that "[a]sbestos has been released into the environment through the plowing of the landfill cap." *Id.*, Vol. III at 94. The injunction prohibited Dyson and Jeffery from disturbing the land and ordered a $52,500 civil penalty

to be paid to IDEM.  We agree with the State that such action was allowed by statute and the trial court did not err in granting the injunction or imposing the civil penalty.

[30]     Dyson does not challenge the trial court's finding that Indiana's environmental laws were violated, but rather alleges that he did not have any care, custody, or control over the site.  Although Dyson repeatedly stated in his motion that he has no care, custody, control, or ownership over the LLC or the site, he failed to demonstrate his assertion with evidentiary support to the trial court.  We acknowledge that Dyson included various documents in the appendix of his Reply Brief in support of his argument, but this evidence was not presented to the trial court and is not part of the record.  We cannot conclude the trial court erred when Dyson failed to demonstrate to the trial court that he did not have an interest in the LLC or the property.

[31]     IDEM subsequently filed a motion to release the $50,000 cash bond to IDEM, in which it argued that no appeal from the permanent injunction had been filed and it had not yet received the payment of the civil penalty.  The trial court issued an order providing the Dysons twenty-one days to respond to IDEM's motion; however, no response was filed, and the trial court therefore granted IDEM's motion to release the cash bond as partial payment of the civil penalty.

[32]     After Dyson's arrest, he posted a $50,000 cash bond and entered into a bond agreement, which required Dyson to comply with the court at all times and stated that "[t]he clerk shall satisfy any judgment entered by the Court with

respect to the forfeited bond with the bond deposited by the principal/defendant." *Id*. at 117. Because Dyson failed to comply with court orders, the trial court was authorized to release the cash bond to IDEM as partial payment of the civil penalty. In sum, the trial court properly issued a permanent injunction which included a civil penalty and properly released the cash bond to IDEM pursuant to the bond agreement in partial satisfaction of the judgment.

# Conclusion

[33] For the foregoing reasons, we conclude the trial court did not abuse its discretion in denying Dyson's motions for relief from judgment and the trial court's entry of the underlying judgments were proper. Accordingly, we affirm.

[34] Affirmed.

Riley, J., and Kirsch, J., concur.