## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision is not binding precedent for any court and may be cited only for persuasive value or to establish res judicata, collateral estoppel, or law of the case.

 

FILED

Aug 07 2024, 9:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Dalton E. Griffith,

*Appellant*

v.

Dawn M. Griffith,

*Appellee*

---

August 7, 2024

Court of Appeals Case No.
24A-DN-580

Appeal from the Kosciusko Superior Court

The Honorable Christopher D. Kehler, Special Judge

Trial Court Cause No.
43D01-1907-DN-219

---

**Memorandum Decision by Judge Brown**
Judges May and Pyle concur.

**Brown, Judge.**

[1] Dalton E. Griffith ("Husband") appeals from the trial court's decree of dissolution and claims the court erred in denying his request to repudiate his settlement agreement regarding the division of his pension. We affirm.

**Facts and Procedural History**

[2] Husband and Dawn M. Griffith ("Wife") were married in 1998. In 2019, Wife filed a petition to dissolve the marriage. The parties participated in mediation in April 2022 which resulted in an agreement resolving all matters except for the division of Husband's military pension. On August 21, 2023, the court held a hearing on the division of Husband's military pension. Wife testified that Husband was in the United States Army, he left the military in 2009, she believed that he was in the military for twenty-three and one-half years, and he received retirement and disability payments. The court admitted a valuation of Husband's military pension.[1] Husband's counsel requested a break.

[3] Following a recess,[2] Husband's counsel stated, "Your Honor, we have reached an agreement to resolve all pending matters before the Court" and asked to read the agreement into the record. Transcript Volume II at 64. The court replied affirmatively and stated it would then ask Wife's counsel if there were any

---

[1] The valuation stated it was based on the assumption that Husband's monthly retirement payment was $2,761, and Wife testified that his disability payment was "around like 13 to1400 a month." Transcript Volume II at 27.

[2] The transcript states: "Recess at 2:40 p.m. until 3:29 p.m." Transcript Volume II at 64.

additions or corrections and "ask both parties who have already been sworn in if this is, in fact, your agreement." *Id*. at 64. The court asked, "what about the entry of the final decree," and after conferring with Wife's counsel, Husband's counsel stated, "[t]he entry of the final decree is today, Your Honor," and the court replied, "Okay. All right. Yes." *Id*. at 64-65. Husband's counsel stated:

> [T]he parties have agreed that [Husband] owes back pay of $36,500, which will come out of Husband's proceeds for the sale of the marital residence. Then the parties agreed that from April of 2023 to the present, [Husband] owes [Wife] $5,600 in pension back pay. He's going to repay that all to her in 12 months, and moving forward from today, which is the date of the decree, the pension will be divided 50/50, evenly, between the two of them. And [Wife's counsel] will prepare the QDRO for DFAS and submit it, and we would just like a minute entry – or [Wife's counsel] and I will submit an agreed to entry for today that will not require clients' signatures – it will just be an agreed to entry.

*Id*. at 65. Wife's counsel stated:

> I think that covers everything. I think that [Husband] has also determined that he'll just make even payments over a year on the $5,600. I'm going to assume that we'll also want to add a provision that if it's not paid within a year, it would then at that point become a judgment and statutory interest would accrue on any balance that's not owed (sic).

*Id*. at 65-66. Husband's counsel said, "we do not have any dates. These are just numbers we've agreed to because that is the best way to resolve this case," and the court stated, "[w]ell, whatever the parties can come up with is better [than] what I can come up with." *Id*. at 66. The court asked the parties if they

heard and agreed to the terms of the agreement, Wife stated "Yes, I do," and Husband stated, "Good to go, sir. Agreed." *Id.* The court stated: "The Court, having found it has jurisdiction over the parties and of the marriage, does now hereby find that the marriage of the parties has suffered an irretrievable breakdown, it shall be dissolved and the parties shall be restored to the status of unmarried persons." *Id.* at 67. The court requested Wife's counsel to submit "the proposed decree and whatever additional decree or orders are necessary to divide the military pension" and stated, "[u]pon receipt of those documents, I will sign those and counsel will receive those through our e-filing system." *Id.* at 67-68. Husband's counsel stated, "September 1 is the first date that the pension's divided 50/50 because we agreed to back pay [for] the four months since April." *Id.* at 68. On September 7, 2023, Husband's counsel filed a motion to withdraw appearance.

[4] On October 6, 2023, counsel for Wife submitted a proposed order. An entry dated October 9, 2023, in the chronological case summary ("CCS") states:

> The Court is in receipt of a proposed Decree of Dissolution filed by counsel for [Wife]. [Husband] is given to and including October 23, 2023, to file a written objection. Absent written objection, the Court will sign the proposed Decree of Dissolution as tendered.

Appellant's Appendix Volume II at 17.

[5] On October 20, 2023, Husband, by new counsel, filed a "Verified Notice of Repudiation of Agreement" stating that he wished to repudiate the agreement

made on August 21, 2023. *Id.* at 96. He asserted that he "felt pressured and forced by his counsel to agree to the terms that were read into the record in open court," he "was under the influence of alcohol at the time of the last hearing," and his "ability to make decisions was impaired." *Id.* He argued that he "cannot agree to provide [Wife] with ½ of his military pension," he "is disabled and not employed," "eleven years of [his] time in the Army and contribution toward his pension benefit were earned prior to the date of the parties' marriage," and "a coverture fraction should be applied in this matter." *Id.* at 97. Husband requested the court to set aside the agreement read into the record and schedule a new hearing on the issue of the military pension. Wife filed a response arguing "[t]he parties each approved the details of the terms to be included in a decree." *Id.* at 102. She argued that she and her counsel did not detect, and the court bailiff did not report, an issue related to Husband's sobriety. Husband filed a reply asserting that the court did not approve the settlement agreement at the August 21, 2023 hearing.

[6] On February 8, 2024, the court issued an order denying Husband's request to repudiate the settlement agreement. It found the parties, under oath, assented to the terms of the agreement which had been recited in open court and had agreed that the agreement was effective August 21, 2023. It noted that, at the August 21 hearing, it found that "the marriage had suffered an irretrievable breakdown, it shall be dissolved and the parties would be restored to the status of unmarried persons," "[t]here was nothing left for the Court to take under advisement, to consider or approve," and "[t]he Court clearly approved the

parties' agreement and was waiting to sign the decree/orders upon receipt from [Wife's counsel]." *Id.* at 162. The court further stated: "Giving Husband until October 23, 2023 to file a written objection was in no way an indication that the Court had not already approved the agreement. The Court simply wanted to provide [Husband] with an opportunity to make sure there were no typographical errors as he was no longer represented by counsel." *Id.* The court also stated that it gave no weight to Husband's assertion that he felt pressured and forced by his counsel to agree to the terms read into the record or to any insinuation that Husband was under the influence of alcohol, it viewed Husband's demeanor and actions, and there was no indication he was under any influence of alcoholic beverages.

Also on February 8, 2024, the trial court signed a decree of dissolution providing in part:

> The parties appeared on August 21, 2023, for final hearing on the issue of the division of [Husband's] military pension. . . . After the presentation of some evidence, by way of testimony elicited from [Wife], and after a brief recess, the parties reported that an agreement had been reached as to the division of [Husband's] military pension.
>
> The COURT DOES NOW APPROVE as the Court's findings the parties' stipulations and agreement as to the division of [Husband's] military pension.
>
> * * * * *
>
> The COURT FURTHER FINDS that [Husband's] entire military pension (and the terms attendant thereto, such as COLA) shall be divided equally between the parties and that a separate order entitled

Military Retired Pay Division Order shall be entered which provides for the equal division of [Husband's] military retirement pension.

The COURT FURTHER FINDS that [Husband] shall pay the sum of $36,500 which represented [his] share of net proceeds from the sale of the former marital residence to [Wife] in order to compensate [her] for her share of the pension benefits paid to [Husband] during the pendency of this action as well as the sum of $5,600 which shall be paid by [Husband] to [Wife] in equal installments over a one year period commencing with the entry of the decree of dissolution.

* * * * *

**SIGNED:  February 8, 2024; EFFECTIVE August 21, 2023**.

*Id.* at 153-154.

## Discussion

[8]     Husband argues the trial court erred in incorporating the settlement agreement regarding the division of his military pension into its dissolution decree because he timely repudiated the agreement.  He argues the court gave him until October 23, 2023, to file an objection and he filed his notice of repudiation on October 20, 2023.  He argues he had a right to repudiate the agreement under Ind. Code § 31-15-2-17, *Akers v. Akers*, 849 N.E.2d 773 (Ind. Ct. App. 2006), and *McClure v. McClure,* 459 N.E.2d 398 (Ind. Ct. App. 1984).  Wife argues "[t]he written decree was only a formality since the parties had agreed on everything," Appellee's Brief at 15, and cites *Sanders v. Sanders*, 105 N.E.3d 1102 (Ind. Ct. App. 2018).

Ind. Code § 31-15-2-17(a) provides that, "[t]o promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for . . . the disposition of any property owned by either or both of the parties[.]" Ind. Code § 31-15-2-17(b) provides "the terms of the agreement, if approved by the court, shall be incorporated and merged into the decree and the parties shall be ordered to perform the terms[.]"

In *Akers*, the husband filed a petition to modify child custody, child support, and parenting time. 849 N.E.2d at 774. The wife and husband, their attorneys, and the judge discussed a settlement in the judge's chambers. *Id*. A few days later, the wife filed a motion asking the court to reject the agreement and schedule a hearing, and one week before the scheduled hearing she filed a notice stating that she wished to repudiate the agreement. *Id*. The husband submitted a proposed order, to which the wife objected, and the court signed the order. *Id*. On appeal, the wife argued the trial court erred in approving the alleged settlement agreement as she had already repudiated it. *Id*. This Court referred to Ind. Code § 31-15-2-17 and held:

> This Court has concluded that the statute envisions a "simple two-step process necessary to bring a valid . . . settlement agreement into existence[.]" *McClure*[,] 459 N.E.2d [at] 401 [] (addressing Indiana Code § 31-1-11.5-10 . . . , the predecessor to Indiana Code § 31-15-2-17, in context of property settlement agreement). First, the plain language of the statute requires a written agreement. *Id.* at 400.

Second, "once there is such an agreement between the parties, it is not effective until approved by the court[.]"[3] *Id.*

\* \* \* \* \*

We believe that the writing requirement of Indiana Code § 31-15-2-17 can be satisfied in two ways. First, and most obviously, the parties can produce and sign a written document containing the terms of their agreement. The second way was suggested by Judge Sullivan, writing in concurrence in *McClure*. He wrote: "While the agreement may not have been reduced to writing in a separate document and signed by the parties as well as by counsel, the agreement became binding upon the parties when it was stipulated into the record." *McClure*, 459 N.E.2d at 401 (Sullivan, J., concurring). We agree with Judge Sullivan that the writing requirement of Indiana Code § 31-15-2-17 can be satisfied by orally stipulating the terms of the settlement agreement into the court record. The parties themselves, their attorneys, or the trial court can recite the terms of the agreement in open court, and the parties can then acknowledge, under oath, their assent to those terms. Placing the agreement on the trial court record by way of a voice recording and/or the court reporters' transcript is tantamount to composing a written settlement document in that both procedures produce tangible proof of the terms of the agreement. Under Indiana Code § 31-15-2-17, until the parties' agreement is memorialized either in writing or on the trial court record, there is nothing for the trial court to approve, and either party is free to repudiate the alleged agreement. *See Eddings* [*v. Eddings*], 437 N.E.2d [493,] 494 [(Ind. Ct. App. 1982)].[4]

[3] In *McClure*, this Court found that the trial judge's comments at a hearing made "the existence of *a signed agreement* a condition precedent to his approval of the agreement" and that the wife repudiated the agreement before the two-step process was complete. 459 N.E.2d at 401.

[4] In *Eddings*, the wife signed a document which purported to divide the marital estate, "[l]ater, after securing counsel to contest the dissolution, she clearly and unequivocally repudiated the document both prior to and during the trial," and this Court held "the alleged agreement was not eligible to be approved and incorporated into the dissolution decree." 437 N.E.2d at 494.

*Id.* at 775-776 (footnote omitted). We observed that the parties' agreement was neither presented to the trial court in written form nor orally recited in open court, found that, by the time the husband's attorney presented the agreement to the trial court, the wife had already repudiated it and therefore there was nothing for the court to approve, and reversed the court's decision to incorporate the alleged agreement into its modification order. *Id.* at 776.

[11] In *Sanders*, at a final hearing in a dissolution proceeding, the terms of a property settlement agreement were read into the record after which both parties agreed to the terms. 105 N.E.3d at 1103. The trial court granted the dissolution petition that day and directed the preparation of a dissolution order that incorporated the terms of the agreement. *Id.* About a month later, the wife moved to repudiate the settlement, which the court denied. *Id.* at 1103-1104. On appeal, the wife asserted the court's adoption of the oral agreement into its dissolution decree was erroneous because, among other reasons, the agreement was not reduced to writing before approval by the court, and she timely repudiated the agreement. *Id.* at 1106. With respect to the writing requirement, this Court cited the discussion in *Akers* related to the ways in which the writing requirement of Ind. Code § 31-15-2-17 can be satisfied. *Id.* at 1107. We concluded that the recitation of the terms of the agreement read in open court, followed by the wife's assent under oath to the terms, satisfied the writing requirement in Ind. Code § 31-15-2-17(a). *Id.*

[12] With respect to the whether the wife timely repudiated the agreement, we held:

As we noted in *McClure*, there is a "simple two-step process necessary to bring a valid property settlement agreement into existence[,]" namely that (1) the parties must come to a valid agreement and (2) the trial court must approve it. *McClure*, 459 N.E.2d at 401. Until a property settlement agreement is approved by the trial court, it can be repudiated by a party. *See id.* ("[O]ur decision is grounded solely on error by the trial court in approving an agreement that was timely repudiated.").

Here, the terms of the Agreement were read in open court and the parties agreed to them, after which the trial court explicitly approved it, stating on the record that "[a]ll property and debts are divided in accordance with the agreement[.]" The trial court also made it abundantly clear that its judgment was to be effective immediately, stating that the parties "are restored to the status of unmarried persons effective immediately" and, "In other words, the divorce is granted today." The trial court's CCS entry indicating that [the husband's] counsel was to prepare a dissolution decree to be submitted later but dated . . . the date of the final hearing . . . further indicates that it considered the matter settled. [The wife's] repudiation came over one month after the trial court approved the Agreement at the final hearing, which is too late.

We acknowledge that some of our precedent indicates that the cutoff for repudiation is not when the property settlement is approved by the trial court but when the dissolution decree is issued. *See, e.g., Anderson v. Anderson*, 399 N.E.2d 391, 398 (Ind. Ct. App. 1979) ("Hence, a settlement agreement that has not been approved by the dissolution court and incorporated and merged into the decree has no legal efficacy.").[5] Under the circumstances of this case, at least, the

---

[5] In *Gabriel v. Gabriel*, this Court noted that "[o]ur meaning" in *Anderson* was that "a party is not bound to comply with a settlement agreement unless and until it is accepted by the dissolution court and made a part of the decree" and that "[n]either *Anderson* nor *Eddings* confer on parties to a settlement agreement an absolute right of repudiation prior to trial court approval of the agreement," "[w]ere it otherwise, the public policy favoring the amicable settlement of disputes by written agreement would be thwarted," and "[a]s would be the case here, one party might reap all the benefit from the substantial performance of an agreement

actual issuance of the decree was little more than a formality, as the trial court made it clear that its judgment was to take effect immediately with a decree detailing the judgment to be issued later. Granting relief to [the wife] on the basis that the terms of the Agreement had not yet been incorporated into the decree when she objected would elevate form over substance in this case. [The wife] has failed to establish that she timely repudiated the Agreement.

*Id.* at 1108 (citations to record omitted).

[13] Here, with respect to the writing requirement of Ind. Code § 31-15-2-17, the record reveals that Husband's counsel recited the parties' agreement related to the division of Husband's military pension and that Husband and Wife, who were under oath, indicated in open court that they agreed to the recited terms. Based on *Akers* and *Sanders*, we find that the writing requirement of Ind. Code § 31-15-2-17 was satisfied.

[14] We next address whether Husband timely repudiated the agreement. At the August 21, 2023 hearing, Husband's counsel stated that the parties had reached an agreement "to resolve all pending matters before the Court," when asked about the entry of the final decree Husband's counsel stated the "entry of the final decree is today," and the court replied, "Okay." Transcript Volume II at 65. The terms of the parties' agreement related to the pension were recited in open court, the parties expressly agreed to the terms, and the trial court stated

yet repudiate it to the other party's detriment prior to court approval." 654 N.E.2d 894, 898 (Ind. Ct. App. 1995), *trans. denied*.

"[t]he Court, having found it has jurisdiction over the parties and of the marriage, does now hereby find that the marriage of the parties has suffered an irretrievable breakdown, it shall be dissolved and the parties shall be restored to the status of unmarried persons." *Id*. at 67. The court asked Wife's counsel to submit "the proposed decree and whatever additional decree or orders are necessary to divide the military pension" and stated, "[u]pon receipt of those documents, I will sign those[.]" *Id*. The transcript of the August 21, 2023 hearing shows that the trial court and the parties considered the matter of the division of Husband's pension to be settled and that the subsequently-signed decree would merely reflect the terms of the parties' agreement.[6]

[15] As for the court's October 9, 2023 CCS entry stating that Husband had until October 23 to file an objection to the proposed decree, in light of the comments by the court, the parties, and counsel at the August 21, 2023 hearing, we cannot conclude that the trial court by its entry provided Husband with the option to reconsider and withdraw his assent to the substantive terms of the settlement agreement which he entered on the record. Rather, we read the entry as giving Husband the opportunity to object to the extent the proposed decree did not correctly reflect the terms of the parties' agreement in court or there was some other misstatement or error in the proposed decree. On this record, it is clear that the entry of the decree was merely a formality to reflect the parties'

---

[6] Indeed, the dissolution decree provided "the marriage of the parties is dissolved as of August 21, 2023," and indicated that, while the court signed the decree on February 8, 2024, it was "EFFECTIVE August 21, 2023." Appellant's Appendix Volume II at 154.

settlement agreement and the court's order of dissolution effective on August 21, 2023.

[16] Based on the record, and in light of the case law above, we find that the trial court did not err in denying Husband's request to repudiate his agreement regarding the division of his pension and in entering the decree of dissolution of marriage.[7]

[17] For the foregoing reasons, we affirm.

[18] Affirmed.

May, J., and Pyle, J., concur.

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Ciyou & Associates, P.C.
Indianapolis, Indiana

Anne Medlin Lowe
Fugate Gangstad Lowe, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

David W. Stone IV
Stone Law Office & Legal Research
Anderson, Indiana

---

[7] Because we affirm the decree of dissolution and its terms related to the division of Husband's pension based on the parties' settlement agreement, we do not address Husband's arguments that the trial court abused its discretion in dividing the pension and in not applying a coverture fraction.

Joanne M. Kolbe
Law Offices of Joanne M. Kolbe
Attorney at Law, P.C.
Warsaw, Indiana